RICHARD OSWALD AND KATHARINA OSWALD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53164. Filed September 28, 1955.

*Richard Oswald, pro se.*
*Richard W. Janes, Esq.*, for the respondent.

1118

1120

BLACK, *Judge:* Respondent, in his brief, states the issue involved here as follows:

Where the Alien Property Custodian had been vested with income producing property are the owners liable for income taxes for the years during which such income was produced and received by the Custodian or in the year when, following divestment, the total amount is ultimately received by the owners?

We think respondent's statement of the issue is correct.

The facts are not in dispute. It is stipulated that petitioners filed timely joint returns for the calendar years 1945, 1946, and 1950, and that they did not include any motion picture royalties in their returns for 1945 and 1946, but that they reported $2,918.17 royalty income in their 1950 return. It has also been stipulated that:

6. The petitioners, during the years 1945 and 1946, were not advised and did not know that such royalty income was received by the Alien Property Custodian from property of theirs vested in the Alien Property Custodian during 1945 and 1946; * * *

Thus it will be seen that petitioners reported the amount which they received in 1950 from the Custodian.

The respondent refused to accept petitioners' method of reporting the income and allocated the sum to 3 years, 1945, 1946, and 1947, as shown in our Findings of Fact. He determined no deficiency for 1947, and that year is not before us. It is respondent's position that the applicable provisions of the Trading With the Enemy Act, as amended, require such allocation to be made. Respondent relies upon Public Law 671, 79th Congress (ch. 878, 2d Sess.), section 36, 60 Stat. 925, at page 929, printed in the margin.[1] The Treasury, under author-

---

[1] SEC. 36. (a) The vesting in or transfer to the Alien Property Custodian of any property or interest (other than any property or interest acquired by the United States prior to December 18, 1941), or the receipt by him of any earnings, increment, or proceeds thereof shall not render inapplicable any Federal, State, Territorial, or local tax for any period prior or subsequent to the date of such vesting or transfer, * * *

(b) The Alien Property Custodian shall, notwithstanding the filing of any claim or the institution of any suit under this Act, pay any tax incident to any such property or interest, or the earnings, increment, or proceeds thereof, at the earliest time appearing to him to be not contrary to the interest of the United States. The former owner shall not be liable for any such tax accruing while such property, interest, earnings, increment, or proceeds are held by the Alien Property Custodian, unless they are returned pursuant to this Act without payment of such tax by the Alien Property Custodian. * * *

(c) Subject to the provisions of subsection (b) hereof, the manner of computing any Federal taxes, including without limitation by reason of this enumeration, the applicability in such computation of credits, deductions, and exemptions to which the former owner is or would be entitled, and the time and manner of any payment of such taxes and the extent of any compliance by the Custodian with provisions of Federal law and regulations applicable with respect to Federal taxes, shall be in accordance with regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury to effectuate this section. Statutes of limitations on assessment, collection, refund, or credit of Federal taxes shall be suspended, with respect to any vested property or interest, or the earnings, increment or proceeds thereof, while vested and for six months thereafter; but no interest shall be paid upon any refund with respect to any period during which the statute of limitations is so suspended.

ity granted it by law, in T. D. 5612, 1948–1 C. B. 144, prescribed certain regulations regarding the interpretation and enforcement of section 36. It is unnecessary to include herein the entire text of those regulations. Much of the regulations is inapplicable to this proceeding. Speaking generally the regulations take notice of the fact that pursuant to Executive Order 9788 (11 F. R. 11081) the functions of the Custodian were transferred to the Attorney General and the regulations are made applicable accordingly. The part of the regulations which seems applicable to the question which we have here to decide is section 452a.24, Computation of Taxes, and, in pertinent part, reads as follows:

(b) *Relationship of Attorney General and former owner.*—In the computation of tax liability under this part, except as otherwise provided herein, the vesting of property shall be considered as not affecting the ownership thereof; and any act of the Attorney General in respect of such property (including the collection or operation thereof and any investment, sale, or other disposition and any payment or other expenditure) shall be considered as the act of the owner. *Nevertheless, except as otherwise provided in the Act or this part, in so far as taxes are incident to vested property during the period of vesting, they shall be payable by the Attorney General, except that to the extent of the value of any of the property returned to the former owner the latter shall be liable for such tax not paid by the Attorney General.* * * * [Emphasis supplied.]

(c) *Laws applicable to computation.*—Except as otherwise specifically provided in this part, the computation under this part of any internal revenue tax liability shall be in accordance with the internal revenue law and regulations applicable thereto, including all amendments of such law or regulations enacted or promulgated prior to determination of the tax.

(d) *Periods for which computations made.*—The amount of income, declared value excess profits, excess profits, capital stock, employment, and excise taxes under the internal revenue laws will be computed for each taxable year or period during all or part of which property is vested prior to the return of the property. * * *

It seems clear from the foregoing regulations that the Attorney General, in his capacity as Custodian, was to pay the income taxes on income earned by property in his hands in the year when such income was earned. The Attorney General, in his capacity as Custodian, was the one who was to be primarily liable for the income taxes, payable, of course, out of the property of the taxpayer in his custody. Under the rule provided by the foregoing regulations, if the Attorney General had made return of the income here in question, he would have returned the net income of $1,715.56 for 1945, as taxable income for that year, and the net income of $1,016.64 for 1946, as taxable income for that year. But the Attorney General did not return the income for taxation and in 1950 he paid it over to petitioners without any deduction for taxes. It is respondent's contention that under the applicable law and regulations petitioners should have returned

the income in the same manner as the law provided the Attorney General should return it, that is to say, by allocating it to the years in which the income was earned and received. Paragraph (d) of the regulations above quoted deals with "Periods for which computations made" and reads as follows:

The amount of income, declared value excess profits, excess profits, capital stock, employment, and excise taxes under the internal revenue laws will be computed for *each* taxable year or period during all or part of which property is vested prior to the return of the property. * * * [Emphasis supplied.]

Certainly, under the law and applicable regulations, if the Attorney General had returned the income for taxation he would have been required to return it in the years when the income was earned and received. Is the rule any different when the Attorney General failed to return the income for taxation but paid it over in one lump sum to petitioners in 1950, without any deduction for taxes? We do not think the rule is any different. It is true that section 36 (b) carries a provision which says:

The former owner shall not be liable for any such tax accruing while such property, interest, earnings, increment, or proceeds are held by the Alien Property Custodian, *unless* they are returned pursuant to this Act without payment of such tax by the Alien Property Custodian. * * * [Emphasis supplied.]

The *unless* provision of the statute is applicable here and we think that the Commissioner is correct in his interpretation of the applicable law and regulations when he holds that petitioners must return the income for taxation in the same manner as the Alien Property Custodian would have been required to return it.

It is respondent's position that the effect of the provisions making the former owner not liable for income tax accruing while the property is vested *unless* such tax may have been returned by the Custodian without payment of such taxes (when read with the other provisions that all statutes of limitations are suspended during the period of such vesting and for 6 months thereafter, taken in conjunction with the rest of section 36) reveals that it was the intent of Congress that the owner should be liable for taxes on income for the year in which such income arose. Otherwise, there would be no purpose, so far as we can see, in suspending the statutes of limitations since taxes on such income would be due in any event upon divestment of the Custodian and receipt of the funds by the owner. In the instant case the lump sum was received in 1950 by petitioners and respondent has allocated it back to the years in which such income arose and computed the liabilities accordingly.

Petitioners, in support of their contention that all of the royalties should have been reported by them in their 1950 return, as they did

report them, rely upon the portion of Regulations 111, printed in the margin.[2]

It is respondent's contention that the regulations relied upon by petitioners are not applicable here because of the special provisions contained in section 36, printed in the margin, and the regulations promulgated thereunder. As already stated by us at some length, we think respondent's contention must be sustained. Respondent, in support of his determination of the deficiencies, strongly relies on *Adele Kahle*, 17 B. T. A. 633, affd. 43 F. 2d 61, certiorari denied 282 U. S. 892, and cases cited therein. In the *Kahle* case, proposed assessments made upon returns prepared and filed by the deputy collector in December 1925 on behalf of the taxpayer for the years 1918 to 1923, inclusive, in respect to income from property held during those years by the Custodian were approved. In approving the Commissioner's determination, among other things, we said:

In *Forstmann* v. *Ferguson*, 17 Fed. (2d) 659; 25 Fed. (2d) 47, the court ruled that the income from property held by the Alien Property Custodian should be returned and taxes thereon paid as and for the years in which the taxpayer would have received it had it not been impounded by the Government.

Under these circumstances we think that the returns prepared and filed by the deputy collector on behalf of the petitioner for the years before us comply with the requirements of the statute, and since the petitioner has not shown that the taxes proposed for assessment thereon are incorrect, the deficiencies determined by the respondent are approved.

While it is true that the *Adele Kahle* case, *supra*, was decided under the Trading with the Enemy Act as it existed during and following World War I and that law has been amended in many respects by section 36 added to the Trading with the Enemy Act by the Act approved August 8, 1946, nevertheless, we think that none of these amendments change the rule of the *Kahle* case, *supra*. In fact we think the language of the statute and the Treasury regulations already quoted and discussed by us make mandatory the carrying out of the same rule approved in the *Kahle* case.

---

[2] SEC. 29.41–2. BASES OF COMPUTATION AND CHANGES IN ACCOUNTING METHODS.—* * * All items of gross income shall be included in the gross income for the taxable year in which they are received by the taxpayer, and deductions taken accordingly, unless in order clearly to reflect income such amounts are to be properly accounted for as of a different period. * * * A taxpayer is deemed to have received items of gross income which have been credited to or set apart for him without restriction. * * *

SEC. 29.42–2. INCOME NOT REDUCED TO POSSESSION.—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. * * *

Petitioners stress the fact that respondent's determination to allocate the royalties of $2,918.17 to the years 1945, 1946, and 1947, and respondent's determining deficiencies of $352 for 1945 and $120 for 1946, works a hardship on them because they had no tax to pay in those 2 years, except for the royalties adjustment, and only $31.58 to pay in 1950, when they returned the $2,918.17 for taxation. However, it is easy to see that in the case of some other taxpayer, who had paid over to him by the Custodian a large amount of income in 1950 which had been earned in prior years by his property, would have his taxes greatly reduced by being allowed to allocate the income to the years in which it was earned while in the hands of the Custodian, just as has been done in this case.

In the interpretation of tax laws the thing which controls is not the tax consequences to any particular taxpayer—that often varies between taxpayers. The important thing is to correctly interpret the intent of Congress in its enactment of the law which is under consideration. That we have endeavored to do in this case. We think that the law and the facts are in favor of the respondent.

*Decision will be entered for the respondent.*